# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

YOLANDA LUMPKIN,
      OBO R.L.,
        Plaintiff,

    vs

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant

Case No. 1:11-cv-207

Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Yolanda Lumpkin brings this action pro se on behalf of her minor child, R.L., pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff R.L.'s application for child's supplemental security income (SSI).[1] This matter is before the Court on plaintiff's Statement of Errors (Doc. 9), the Commissioner's response in opposition (Doc. 11), and plaintiff's reply memorandum (Doc. 12).

## PROCEDURAL BACKGROUND

Plaintiff was born in 2000 and was nine years old at the time of the ALJ's decision. Plaintiff's mother, Yolanda Lumpkins, filed an application for child's SSI benefits on his behalf in July 2007, alleging disability due to chronic asthma. Plaintiff's application was denied initially and upon reconsideration. Plaintiff requested and was granted a de novo hearing before administrative law judge (ALJ) Deborah Smith. A hearing was held on November 24, 2009. (Tr. 27-65). Plaintiff, who was represented by counsel, appeared at the hearing with his mother.

---

[1] A non-attorney parent my bring an action pro se on behalf of a minor child in SSI appeals. *Tyler v. Commissioner of Social Sec.,* No. 1:09-cv-686, 2010 WL 3398763, *4 (W.D. Mich. Aug. 4, 2010) (*citing Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000)).

On December 16, 2009, the ALJ issued a decision denying plaintiff's SSI application. (Tr. 13-22). The Appeals Council denied plaintiff's original request for review. (Tr. 6-8). The Appeals Council thereafter set aside its original decision to consider the following additional information: (1) treatment records from Children's Hospital Medical Center dated January 12, 2010 through December 2, 2010, and (2) treatment records from Children's Hospital dated January 12, 2010 through May 4, 2010. (Tr. 478-573). After considering the additional evidence, the Appeals Council denied plaintiff's request for review. (Tr. 1-5).

## APPLICABLE LAW

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

To qualify for SSI, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. An individual under the age of 18 is considered disabled for purposes of SSI "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional

2

limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The Social Security regulations set forth a three-step sequential analysis for determining whether a child is disabled for purposes of children's SSI benefits:

1. Is the child engaged in any substantial gainful activity? If so, benefits are denied.

2. Does the child have a medically severe impairment or combination of impairments? If not, benefits are denied.

3. Does the child's impairment meet, medically equal, or functionally equal any in the Listing of Impairments, Appendix 1 of 20 C.F.R. pt. 404, subpt. P? If so, benefits are granted.

20 C.F.R. § 416.924(a)-(d). An impairment which meets or medically equals the severity of a set of criteria for an impairment in the Listings, or which functionally equals a listed impairment, causes marked and severe functional limitations. 20 C.F.R. § 416.924(d)(1).

In determining whether a child's impairment(s) functionally equals the Listings, the adjudicator must assess the child's functioning in six domains:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Heath and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi). To functionally equal the Listings, an impairment must result in "marked" limitations in two domains of functioning or "extreme" limitation in one

domain. 20 C.F.R. § 416.926a(d). The relevant factors to be considered in making this evaluation are (1) how well the child initiates and sustains activities, how much extra help he needs, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) how the child is affected by his medications or other treatment. 20 C.F.R. § 416.926a(a)(1)-(3). In determining whether the child has a "marked" or "extreme" limitation, all the relevant information in the case record will be considered, including the signs, symptoms and laboratory findings; descriptions about the child's functioning from parents and other individuals who know the child; and other relevant factors set forth in the regulations. 20 C.F.R. § 416.926a(e)(1)(i).

An individual has a "marked" limitation when the impairment "interferes seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation is one that is "more than moderate" but "less than extreme." *Id*. An "extreme" limitation exists when the impairment "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). An extreme limitation is the rating given to the worst limitations. *Id*.

For the sixth domain of functioning, "health and physical well-being," a child may be considered to have a "marked" limitation if he is frequently ill because of his impairments or has frequent exacerbations of his impairments which result in significant, documented symptoms or signs. 20 C.F.R. § 416.926a(e)(2)(iv). For purposes of this domain, "frequent" means that the child has "episodes of illness or exacerbations that occur on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more." *Id*. A child may also be found to have a "marked" limitation if he has "episodes that occur more often than 3 times in a year or once

4

every 4 months but do not last for 2 weeks, or occur less often than an average of 3 times a year

or once every 4 months but last longer than 2 weeks, if the overall effect (based on the length of

the episode(s) or its frequency) is equivalent in severity." *Id*.

If the child's impairment meets, medically equals, or functionally equals the Listings, and

if the impairment satisfies the Act's duration requirement, then the child is considered disabled.

20 C.F.R. § 416.924(d)(1). If both of these requirements are not satisfied, then the child is not

considered disabled. 20 C.F.R. § 416.924(d)(2).

## MEDICAL RECORD

### 2006 records

Plaintiff was followed at Group Health Associates for asthma throughout 2006. Plaintiff

was seen for wheezing in January 2006. (Tr. 395-397). On examination, his lungs were clear to

auscultation and he was breathing comfortably with no wheezes or rales. The plan was to

continue his current medications and to add a cough medicine. Dr. Rosy Thind, M.D., treated

plaintiff for left ear pain in May 2006. (Tr. 392-394). The history noted cough, mainly at night,

occasional wheezing, sneezing and stuffy nose. Plaintiff was taking Advair and Albuterol daily

with fair results, but he was not taking Singulair or Zyrtec daily. On examination of the lungs,

there were no retractions, crackles, wheezes or ronchi, and plaintiff had good air entry and equal

breath sounds.

At a checkup in June 2006, plaintiff's likely asthma triggers were reported to be fresh cut

grass and being outside. (Tr. 240-243). The report noted that plaintiff slept well at night; he

played baseball and would start football in the fall; and he had no respiratory problems. On

examination of the lungs, Dr. Thind reported scattered, short expiratory wheezes bilaterally but

no cough; no flaring or retractions; no crackles; and no rhonchi. Plaintiff was breathing comfortably. He was to continue taking Singulair and increase the Advair dosage. Plaintiff was diagnosed with mild persistent asthma with mild exacerbation, which was not adequately controlled.

### 2007 records

Plaintiff was treated at Group Health Associates for asthma throughout 2007. In March 2007, Dr. Thind treated plaintiff for a cough that may have resulted from asthma or allergies. (Tr. 233-235). Plaintiff did not have any retractions, crackles, wheezes or rhonchi on examination of the lungs.

At a well-child visit in June 2007, it was reported that plaintiff's asthma had been flaring with cough at night. (Tr. 226-228). His medications at that time included Albuterol, Advair, Zyrtec, and Singulair. Plaintiff's activities included playing on a baseball team, playing outside, and swimming. No shortness of breath was reported. Passive smoke exposure inside and outside the house was noted, and plaintiff's family was counseled on the risks of passive smoke exposure.

Plaintiff was treated at the emergency room on September 16, 2007, for an acute exacerbation of asthma. (Tr. 206-207, 224). He was given a prescription for prednisone. (Tr. 207). Plaintiff's mother contacted Group Health Associates on the morning of September 17, 2007, and reported that plaintiff had returned to school but was wheezing and coughing. (Tr. 224-225).

Plaintiff was admitted to Children's Hospital for an overnight asthma episode on October 4, 2007. (Tr. 186-205, 222). He was discharged that same day. Plaintiff's mother reported that

his asthma had been gradually worsening over the past several months. (Tr. 200). It was noted that plaintiff was on multiple preventive medications but was "exposed to lots of smoke at home." (Tr. 222). His discharge medications were Albuterol, Zyrtec, Nasonex, Singulair, Advair, and a 5-day course of Oraped. (Tr. 186). Plaintiff was seen for follow-up at Group Health Associates on October 8, 2007. (Tr. 213-214). It was noted that plaintiff's symptoms had markedly improved since his discharge from the hospital and that his current symptoms consisted of mild intermittent wheezing.

Plaintiff was examined by pediatric medical consultant Scott Steinberg, M.D., on December 20, 2007. (Tr. 249-251). According to the history that was provided, plaintiff's most frequent symptom was a night cough, which he experienced almost daily and which was worse in the spring and the summer. During those seasons, he had frequent shortness of breath and occasional wheezing with outdoor activity. He did not seem to have difficulty in gym class. His medications included Albuterol via nebulizer every night, Albuterol inhaler via spacer before and after school, additional Albuterol puffs as needed, and Advair. Most of the time his symptoms responded well to Albuterol. In the past, the school had called plaintiff's mother about four to five times per year to pick him up from school, but this had not occurred at all for that school year as of the date of the examination. So far, plaintiff had missed two days of school due to his asthma. His symptoms resulted in about five to six emergency room visits per year, which usually required a burst of oral prednisone. (Tr. 249). Plaintiff had been hospitalized for asthma just once, which was on October 5, 2007.[2] Plaintiff also suffered from symptoms of allergic rhinitis. On examination, his lungs were clear with equal breath sounds; there were no wheezes,

_____

[2] The hospital records show the actual date was October 4, 2007. (Tr. 222).

ronchi or rales; there was no prolonged expiration; and no chest deformity was noted. (Tr. 250).
Dr. Steinberg diagnosed plaintiff with asthma, allergic rhinitis, atopic dermatitis, and an excision
of a chest wall cystic lesion. (Tr. 251).

### 2008 records

Dr. John Mormol, M.D., a state agency reviewing physician, completed a Childhood
Disability Evaluation Form dated January 21, 2008. (Tr. 252-257). He opined that plaintiff's
asthma was severe but did not meet, medically equal, or functionally equal the Listings. (Tr.
252). He further opined that plaintiff had no limitation in the domains of acquiring and using
information; attending and completing tasks; interacting and relating with others; moving about
and manipulating objects; and caring for himself. (Tr. 254-255). However, Dr. Mormol
determined that plaintiff was markedly limited in the domain of health and physical well-being.
Dr. Mormol wrote:

> 7 ½ yr old male with asthma, allergic rhinitis & mild atopic dermatitis. The
> allergic rhinitis seems to be the trigger of his asthma. Has required two ER visits
> in the past 12 months. Despite aggressive medical therapy, the clmt experiences
> symptoms daily, including sniffling, sneezing and nighttime cough.

(Tr. 255).

Plaintiff presented to the Children's Hospital Emergency Department with complaints of
wheezing and an acute exacerbation of asthma on February 11, 2008. (Tr. 283-291). An x-ray
showed linear atelectasis with mild peribronchial cuffing most compatible with reactive airway
disease or viral illness. (Tr. 290). Plaintiff was treated with Albuterol, prescribed a 5-day course
of Prednisone, and discharged later that same day.

On February 22, 2008, Dr. Jeff Raub, M.D., with Group Health Associates saw plaintiff for a rhinitis and asthma consultation. (Tr. 306-308). He noted that plaintiff had a long history of moderate to severe asthma; he had been having flare-ups every few weeks; and he had been coming in for office visits or going to Children's Hospital Emergency Room for nebulizer treatments and prescriptions for oral steroids several times a year. On examination, plaintiff was breathing comfortably and was clear to auscultation. Dr. Raub diagnosed plaintiff with uncontrolled asthma, allergic rhinitis, and acute sinusitis.

At a follow-up visit in March of 2008, Dr. Raub noted that plaintiff had "been doing well from a breathing standpoint and has not had any flare ups." (Tr. 301). The impression was "Asthma, severe persistent" and allergic rhinitis. (Tr. 302).

In a medical report dated March 26, 2008, Dr. Gurpreet Thind indicated that she had been treating plaintiff for four years. (Tr. 292-293). She reported that plaintiff still experienced asthma flare-ups despite optimal medical management; he required steroids up to several times a year; he had four asthma episodes over the past four months; and he had two emergency room visits on September 15, 2007 and October 4, 2007, with the latter date being an admission.

Dr. Stephen Bird treated plaintiff on August 19, 2008, after he presented with complaints of wheezing, cough and trouble breathing. (Tr. 336-338). The assessment was moderate persistent asthma, mild exacerbation. Plaintiff was seen by Dr. Thind two days later after he failed to improve. (Tr. 334-336). On examination, he had bilateral wheezing without distress and an asthma cough. Plaintiff was placed on a five-day course of Orapred.

### 2009 Records

In early 2009, plaintiff underwent a nose cauterization for nosebleeds. (Tr. 424-434). There was no wheezing upon physical examination performed on January 23, 2009, in connection with the surgery. (Tr. 330). When plaintiff was examined on February 11, 2009, prior to the day of the surgery, one wheeze on the left was noted but lungs were clear to auscultation, plaintiff was breathing comfortably, and there were no rales. (Tr. 326-27).

In April, plaintiff was seen for persistent wheezing which had not improved on medication and for frequent coughing. (Tr. 320). He was given a nebulizer treatment, after which he had minimal residual wheezing. (Tr. 321).

At a routine health exam performed by Dr. Thind on July 2, 2009, plaintiff's diagnoses included passive smoke exposure in addition to asthma and allergic rhinitis. (Tr. 311-312). His family was educated on the risks of second-hand smoke exposure at that time. It was noted that plaintiff and his parents were concerned that the asthma was "doing alright right now but was flaring." (Tr. 313). Plaintiff's activities included participation on the baseball and football teams. His athletic history included no shortness of breath. (*Id.*). On examination, his lungs were clear to auscultation; he was breathing comfortably; and there were no crackles, wheezes or rhonchi. (*Id.*).

In July 2009, plaintiff presented to the Children's Hospital Medical Center emergency room with a moderate asthma exacerbation. (Tr. 414-425). Plaintiff had excellent improvement in his symptoms following treatment and was discharged with a five-day course of Orapred and instructions for Albuterol usage.

10

In September 2009, plaintiff presented to the emergency room again with complaints of persistent coughing and wheezing. (Tr. 405-413). On physical examination, his breath sounds were equal bilaterally; there were no rales, ronchi or wheezes; and he had normal respiratory effort/excursion. (Tr. 410). He appeared to be "very well" and was breathing comfortably with no wheezing. (Tr. 412). He was diagnosed with an acute exacerbation of asthma; administered Ibuprofen for pain and Orapred; and discharged with a prescription for oral steroids and with instructions to continue using his asthma medications, which were listed as Allegra, Singulair, Advair, Albuterol, and Pulmicort. (Tr. 413).

Plaintiff underwent allergy skin testing and spirometry testing in December 2009. (Tr. 471-477). Breath sounds with wheezing throughout were noted on spirometry testing. (Tr. 472). Plaintiff was diagnosed with moderate, persistent asthma; exercise-induced asthma; and mild atopic dermatitis. He tested allergic to molds and trees. (Tr. 474).

### Evidence Presented to the Appeals Council

Plaintiff was seen for an asthma follow-up at Cincinnati Children's Hospital Medical Center on January 12, 2010, by Dr. Raouf Amin, M.D. (Tr. 479-499, 570). He was not currently in exacerbation. His symptoms included wheezing with exercise and non-productive cough which occurred more than once daily. He preferred sedentary activity as a result of his asthma. Plaintiff had not missed any days of school in the last month. He used quick relief medications daily. Dr. Amin diagnosed plaintiff as having severe asthma. Although his pulmonary function test was slightly improved compared to the previous study, plaintiff continued to have mild to moderate small airway obstruction. Dr. Amin expressed concern that plaintiff's "technique might not be optima[l]" and that he was not receiving adequate maintenance treatment for his

11

asthma. (Tr. 481). Plaintiff's medications included Singulair, Advair, Allegra, and Albuterol. Flovent was added to his medications.

Dr. Amin saw plaintiff for another follow-up appointment on May 4, 2010. (Tr. 500-514, 572). He diagnosed plaintiff with extrinsic asthma, unspecified. Plaintiff was not in exacerbation; his symptoms currently included wheezing with exercise and cough with exercise, which occurred daily to weekly; and he was using quick-relief medications one to three times a week. Plaintiff had no current limitations in activity from asthma and had missed no days of school in the past month. On examination, his effort and breath sounds were normal; there was normal air entry; and plaintiff had no wheezes, no rhonchi, and no rales. Dr. Amin noted that while plaintiff's pulmonary function was improved, he continued to report frequent symptoms which suggested inadequate control of his airway hyperactivity. Dr. Amin believed that plaintiff's family remained somewhat confused about the multiple prescriptions they had been given by different providers.

On a July 27, 2010 visit for asthma follow-up, Dr. Amin noted that plaintiff was not currently in exacerbation but his symptoms included wheezing and non-productive cough which occurred daily. (Tr. 515-528). He had wheezing on examination. It was noted that plaintiff's family had been in Florida but had to return to Cincinnati because of plaintiff's persistent symptoms. Dr. Amin stated that plaintiff did not seem to follow the prescribed regimen, and his mother indicated that the co-pay for Advair and Flovent was not affordable if he was to take his medication twice per day. She also assumed his asthma was under good control since he did not have severe asthma attacks requiring visits to the emergency room. It was also noted that plaintiff's mother smoked 4-5 cigarettes a day. (Tr. 516). Dr. Amin diagnosed plaintiff with

12

moderate to severe asthma; he opined that low adherence to treatment was the main reason for poor asthma control; and he had the family meet with a social worker who directed them to sources of additional coverage for which they might be eligible.

On October 15, 2010, plaintiff's school sent him to the hospital from football practice for wheezing. (Tr. 529-530, 544-569). The hospital reports noted that plaintiff's mother had been unable to get his asthma medication to him prior to practice. He was given treatment in the ambulance and was doing well by the time he arrived at the hospital, so he was sent home with no other problems reported.

At a follow-up appointment on October 18, 2010, plaintiff was not in exacerbation; he had no limitations from asthma; he had not missed any days from school in the last month; and his symptoms were limited to wheezing during exercise. (Tr. 530-543). Dr. Amin recommended that because his pulmonary function was "completely normal" and symptoms were limited to exercise, plaintiff should receive Flovent twice a day, he was to discontinue Advair, and he was to use Albuterol 15 minutes before exercise. (Tr. 532).

**Evidence Presented to the Court**

Plaintiff submitted with the Statement of Errors a "Bureau for Children with Medical Handicaps Letter of Approval" issued on June 29, 2011, showing that plaintiff was approved for Medicaid coverage beginning July 1, 2011, and listing his diagnosis as "asthma unspecified." (Doc. 9-1). The information attached to the letter shows that plaintiff had been hospitalized in November 2010 for two nights for asthma upon his return from a school camping outing. On the assessment form under the pulmonary category, it was noted that plaintiff has asthma; he is

followed by Dr. Amin; he is treated with medication; he has wheezing; and he stays indoors during the summer on very hot days.

## ALJ HEARING TESTIMONY

Plaintiff's mother, Yolanda Lumpkin, testified at the ALJ hearing that plaintiff lives with her and her husband and three other children. (Tr. 32). She testified that no one smokes in the house; she has never smoked in the house; and she has a designated spot where she smokes outside. (*Id*.). She reported that plaintiff does well in school. (Tr. 33). Ms. Lumpkin stated that plaintiff participates in regular gym class and he can run and play. (Tr. 33, 35). However, plaintiff usually stays inside during the summer. (Tr. 34). He cannot run for a long time or participate in organized sports that require a lot of running because his asthma is triggered by running and other exertional activities and by environmental factors. (Tr. 34-36, 52-53). Ms. Lumpkin testified that plaintiff uses a nebulizer and takes Advair on a daily basis even when he is symptom-free. (Tr. 42, 48-49). She described plaintiff as being "fine" when he is not having a flare-up. (Tr. 48). She testified that plaintiff has flare-ups almost every month, and that he wheezes "constantly," including at night. (Tr. 47, 53). He uses the Albuterol inhaler when he is having a flare-up. (Tr. 49-50). Ms. Lumpkin testified that plaintiff does not miss a lot of school because he has medication at school; she had been called at least five or six times by the school over the course of the previous school year due to plaintiff's asthma symptoms; and as of the date of the ALJ hearing, she had not yet been called to the school. (Tr. 51).

Counsel for plaintiff stated at the hearing that plaintiff has no behavioral problems. (Tr. 37). Counsel stated that no pulmonary function studies had been performed as of that date. (*Id*).

14

Counsel reviewed with the ALJ the records showing the number of emergency room visits and office visits for asthma treatment plaintiff had in 2007 and 2008. (Tr. 38-43).

Plaintiff testified at the hearing that his mother sometimes smokes "out the window" when he and his brother are in the car with her. (Tr. 62). Plaintiff also testified that his mother smokes in her bedroom. (*Id*.). Plaintiff testified that his asthma will worsen if he is around smoke. (*Id*.).

## THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant was born on April 13, 2000. Therefore, he was a school-age child on July 6, 2007, the date the application was filed, and is currently a school-age child. (20 C.F.R. § 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity at any time since July 6, 2007, the application date (20 C.F.R. § 416.924(b) and § 416.971, *et seq*.).

3. The claimant has the following severe impairments: asthma and allergic rhinitis (20 C.F.R. § 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.924, § 416.925 and § 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the Listings (20 C.F.R. § 416.924(d) and § 416.926a).

6. The claimant has not been disabled, as defined in the Social Security Act, since July 6, 2007, the date the application was filed (20 C.F.R. § 416.924(a)).

(Tr. 16-22).

In determining that plaintiff's impairments were not functionally equivalent to a listed impairment, the ALJ found:

1. Plaintiff has no limitation in acquiring and using information. (Tr. 20).

15

2. Plaintiff has no limitation in attending and completing tasks. (Tr. 20).

3. Plaintiff has no limitation in interacting and relating to others. (Tr. 20).

4. Plaintiff has no limitation in moving about and manipulating objects. (Tr. 20).

5. Plaintiff has no limitation in the ability to care for himself. (Tr. 21).

6. Plaintiff has less to marked to marked limitation in health and physical well-being. (Tr. 22).

## STATEMENT OF ERRORS

Liberally construing plaintiff's pro se statement of errors in his favor, plaintiff challenges the ALJ's finding of non-disability on the grounds that: (1) the ALJ failed to take into account all of the limitations imposed on plaintiff as a result of his asthma and the number of hospitalizations and emergency room visits he has required; and (2) the ALJ erroneously discounted the credibility of plaintiff's mother based on evidence regarding her smoking. Plaintiff has also submitted for the Court's consideration evidence that was not before either the ALJ or the Appeals Council, thus presenting an issue as to whether this matter should be remanded pursuant to Sentence Six of 42 U.S.C. § 405(g) for consideration of this new evidence, as well as for consideration of the evidence that was not before the ALJ but which the Appeals Council accepted for consideration.

In response, the Commissioner contends that (1) the evidence submitted to the Appeals Council and to this Court after the ALJ's decision does not satisfy the criteria for a remand under Sentence Six of 42 U.S.C. § 405(g), and (2) the ALJ's decision that plaintiff had either no limitation or less than marked limitations in the various domains of functioning is supported by substantial evidence.

16

## OPINION

Because plaintiff is proceeding pro se, the Court has carefully reviewed the ALJ's decision to determine whether the ALJ's critical findings of fact were made in compliance with the applicable law and whether substantial evidence supports those findings. The Court has considered the issues raised by plaintiff as well as those presented by defendant's responsive memorandum. The Court finds after a careful review of the record that (1) the criteria for a Sentence Six remand are not satisfied, and (2) the decision of the ALJ is supported by substantial evidence and should be affirmed.

### I. The Criteria for a Sentence Six Remand Are Not Satisfied.

The District's Court review is limited to evidence that was before the Commissioner. *Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 685 (6th Cir. 1992). When the Appeals Council declines review, as it did in this case, it is the decision of the ALJ and therefore the facts before the ALJ that are subject to appellate review. *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993). The Court may not consider evidence presented for the first time to either the Appeals Council or the District Court in deciding whether to uphold, modify, or reverse the ALJ's decision. *Id*. at 696. *See also Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996).

Accordingly, the Court may not consider the following evidence presented to the Appeals Council in this case in deciding whether to uphold, modify, or reverse the ALJ's decision: (1) the treatment records from Children's Hospital Medical Center dated January 12, 2010 through December 2, 2010, and (2) the treatment records from Children's Hospital dated January 12, 2010 through May 4, 2010. (Tr. 478-573). Nor may the Court consider the letter from the

17

Bureau for Children with Medical Handicaps and assessment attached to plaintiff's Statement of Errors. (Doc. 9-1).

"The district court can, however, remand the case [pursuant to Sentence Six of 42 U.S.C. § 405(g)] for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it" to the ALJ. *Cline*, 96 F.3d at 148. *See also Ferguson v. Commissioner of Social Sec.*, 628 F.3d 269, 276 (6th Cir. 2010). Evidence is "new" if it was not in existence or available to the claimant at the time of the administrative proceeding. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). To be considered "material" within the meaning of § 405(g), the new evidence 1) must be relevant and probative to plaintiff's condition prior to the Commissioner's decision and 2) must establish a reasonable probability that the Commissioner would have reached a different decision if the evidence had been considered. *Sizemore v. Secretary of H.H.S.*, 865 F.2d 709, 711 (6th Cir. 1988); *Oliver v. Secretary of H.H.S.*, 804 F.2d 964, 966 (6th Cir. 1986). To show "good cause," the moving party must present a valid justification for the failure to have acquired and presented the evidence in the prior administrative proceeding. *Foster*, 279 F.3d at 357.

Plaintiff has not made the required showing with respect to the evidence he seeks to present in this case. First, the hospital records generated in 2010 are "new" as they postdate the ALJ's December 2009 decision. However, they are not material because the records do not raise a "reasonable probability" that the ALJ would have reached a different disposition of the disability claim if presented with the new evidence. *See Ferguson*, 628 F.3d at 276 (citing *Foster*, 279 F.3d at 357). The records are largely cumulative. They show a continuation of the pattern where plaintiff has experienced periodic exacerbations of his asthma and required

18

occasional emergency treatment, but not of such a frequency and degree that his asthma has rendered him disabled. The records do not demonstrate that plaintiff's asthma has interfered with his school attendance or significantly impacted his other activities. Moreover, the records indicate that poor control of plaintiff's symptoms during the 2010 time frame was often attributed to his failure to adhere to his medication regimen. (Tr. 481, 517, 544). *See Brace v. Astrue,* 578 F.3d 882, 885 (8th Cir. 2009) (impairment not considered disabling if it can be sufficiently controlled by treatment or medication) (citing 20 C.F.R. § 416.930(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled. . . .)). Thus, the ALJ would not likely have determined that plaintiff was entitled to SSI benefits if presented with this evidence.

Second, although the July 2011 letter is likewise new, the letter and attached assessment are not material. The assessment simply summarizes evidence that was before the ALJ with the exception of a notation that plaintiff was hospitalized for two nights in November 2010, which is after the period under consideration. There is not a reasonable probability the Commissioner would have reached a different decision if presented with this evidence.

Accordingly, a remand pursuant to Sentence Six of 42 U.S.C. § 405(g) for further administrative proceedings in light of the evidence presented to the Appeals Council and to this Court is not warranted. A Sentence Six remand should not be granted.

## II. The ALJ's Finding that Plaintiff's Impairment Does Not Meet or Medically Equal Listing 103.03B or C is Supported by Substantial Evidence.

The Commissioner argues that plaintiff does not raise any specific challenge to the ALJ's findings that (1) he did not meet, equal or functionally equal the criteria of any Listing, and (2) he has no limitation or less than marked limitation in the various domains of function for evaluation

19

of childhood disability. The Commissioner contends that plaintiff has therefore waived any

challenge to these findings. However, because plaintiff is proceeding pro so, it is incumbent

upon the Court to carefully review the ALJ's decision and determine whether the ALJ's critical

findings of fact were made in compliance with the applicable law and whether substantial

evidence supports those findings.

The first issue for the Court to determine is whether substantial evidence supports the

ALJ's finding that plaintiff's impairments do not meet or medically equal the Listings. At the

ALJ hearing, counsel for plaintiff argued that plaintiff's asthma met Listing 103.03B and C.

Listing 103.03B and C provide as follows:

> 103.03 Asthma. With:
>
> . . .
> B. Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring
> physician intervention, occurring at least once every 2 months or at least six times
> a year. Each inpatient hospitalization for longer than 24 hours for control of
> asthma counts as two attacks, and an evaluation period of at least 12 consecutive
> months must be used to determine the frequency of attacks.
> or
> C. Persistent low-grade wheezing between acute attacks or absence of extended
> symptom-free periods requiring daytime and nocturnal use of sympathomimetic
> bronchodilators with one of the following:
> 1.Persistent prolonged expiration with radiographic or other appropriate imaging
> techniques evidence of pulmonary hyperinflation or peribronchial disease; or
> 2. Short courses of corticosteroids that average more than 5 days per month for at
> least 3 months during a 12-month period. . . .

Listing 3.00C defines "attacks" as follows:

> C. Attacks of asthma . . . are defined as prolonged symptomatic episodes lasting
> one or more days and requiring intensive treatment, such as intravenous
> bronchodilator or antibiotic administration or prolonged inhalational
> bronchodilator therapy in a hospital, emergency room or equivalent setting.
>
> Hospital admissions are defined as inpatient hospitalizations for longer than 24
> hours. The medical evidence must also include information documenting
> adherence to a prescribed regimen of treatment as well as a description of physical

signs. For asthma, the medical evidence should include spirometric results
obtained between attacks that document the presence of baseline airflow
obstruction.

The ALJ determined that plaintiff did not satisfy Listing 103.03B because he does not

have the required frequency of attacks. The ALJ stated that plaintiff was seen in emergency

departments on September 16, 2007 (Tr. 206-207) (visit of approximately five hours duration);

October 8, 2007, which was a 24-hour admission (Tr. 186-205, 222)[3]; and February 11, 2008 (Tr.

283-291). Plaintiff was seen for office visits on August 19 and 21, 2008, for one sustained attack

(Tr. 334-338); he was seen in the doctor's office on April 21, 2009 (Tr. 320-321); and he was

treated in the emergency room on July 12, 2009, and September 26, 2009 (Tr. 414-425; 405-

413). The number of attacks requiring physician intervention falls short of the number which

must occur within a consecutive 12-month period in order to satisfy Listing 103.03B.

Accordingly, the ALJ's determination that plaintiff's impairment does not meet 103.03B is

supported by substantial evidence.

Substantial evidence likewise supports the ALJ's finding that plaintiff does not meet

Listing 103.03C. The ALJ determined that physical examinations do not show persistent

wheezing because the record characterizes plaintiff's asthma as only "mild" (Tr. 18, citing 242-

6/06 check-up diagnosing plaintiff with "mild persistent, mild exacerbation" asthma and

reporting "scattered short expiratory wheezes bilaterally" on examination); "moderate to severe"

(Tr. 18, citing Tr. 294-308, which documents numerous office visits where there are reports of

wheezing but not on examination); "moderate" (Tr. 18, citing Tr. 460-10/4/07 Children's

---

[3]The hospitalization actually occurred on October 4, 2008, and plaintiff was admitted and
discharged the same day. (Tr. 187). Plaintiff's follow-up visit with his treating physician was on
October 8. (Tr. 367).

21

Hospital record which actually characterizes plaintiff's asthma as "significant moderate persistent"); and "moderate persistent" (Tr. 18, citing Tr. 474-12/04/09 allergy testing report which lists plaintiff's diagnoses). The medical evidence of record supports the ALJ's determination that plaintiff does not suffer from persistent low-grade wheezing. To the contrary, only intermittent episodes of wheezing of varying duration are reported in the record. At the October 8, 2007 follow-up visit at Group Health Associates, the examining physician reported that plaintiff's current symptoms consisted of mild intermittent wheezing. (Tr. 213-214). Dr. Steinberg reported in December 2010 that plaintiff experienced "occasional" wheezing with outdoor activity, primarily during the spring and summer. (Tr. 249-250). Plaintiff had no wheezes on that examination. Dr. Mormol reported that plaintiff experienced daily symptoms of sniffling, sneezing and nighttime cough, but he did not mention wheezing among plaintiff's daily symptoms. (Tr. 255). Plaintiff was seen at the doctor's office for wheezing which had not improved with treatment in April 2009 (Tr. 320), but no wheezing was reported at his July 2009 check-up. (Tr. 313). Plaintiff went to the emergency room for wheezing in September 2009, but the wheezing responded to treatment. (Tr. 411-412). Thus, the medical evidence does not show that plaintiff suffered from persistent low-grade wheezing.

Listing 103.03C is also satisfied if there is an "absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators" and one of the other two conditions set forth in 103.03C is satisfied. The records show that plaintiff required the fairly regular use of a sympathomimetic bronchodilator, Albuterol. However, even assuming this requirement of subsection C is satisfied, neither 103.03C.1 nor C.2 is satisfied. There is no evidence that plaintiff suffered from pulmonary hyperinflation or peribronchial disease so as to

22

satisfy C.1. Moreover, although plaintiff sometimes required short courses of corticosteroids (Tr. 206-207-September 2007; Tr. 186-October 2007; Tr. 284-February 2008; Tr. 334-336-August 2008; Tr. 423-July 2009; Tr. 413-September 2009), the amount of short-term corticosteroid use does not satisfy the frequency requirement under C.2 (*i.e.*, more than 5 days per month for at least 3 months during a 12-month period).

Accordingly, substantial evidence supports the ALJ's finding that plaintiff's impairment does not meet or medically equal Listing 103.03B or C.

### III. The ALJ's Finding that Plaintiff's Impairments Do Not Functionally Equal the Listings is Supported by Substantial Evidence.

The ALJ's finding that plaintiff does not have an impairment or combination of impairments that functionally equals the Listings is supported by substantial evidence. There is no allegation that plaintiff is limited in the first five relevant domains, and Dr. Mormol, the state agency reviewing physician, found in the Childhood Disability Evaluation form he completed that plaintiff had no limitations in any of these five domains. (Tr. 252-257). Thus, the only functional domain at issue in this case is the sixth domain of health and physical well-being. To functionally equal the Listings in a single functional domain, plaintiff's impairment must result in an "extreme" limitation. 20 C.F.R. § 416.926a(d). The ALJ decided that plaintiff's limitation in the domain of health and physical well-being was less than marked to marked. (Tr. 22). The medical and other evidence of record supports the ALJ's decision in this regard.

In rendering her determination, the ALJ afforded great weight to the opinions of Dr. Mormol and Dr. Steinberg, the consultative examining physician. Dr. Mormol determined that plaintiff had "marked" limitations in the domain of health and physical well-being. (Tr. 255). His finding that plaintiff suffered from no more than marked limitations in this domain is not

23

contradicted by the other medical evidence of record and is consistent with the findings of Dr. Steinberg. On examination by Dr. Steinberg, plaintiff's lungs were clear with equal breath sounds; there were no wheezes, ronchi or rales; there was no prolonged expiration; and no chest deformity was noted. (Tr. 250). The only persistent symptoms documented by Dr. Steinberg were sniffling, sneezing and a daytime cough. (Tr. 251). Dr. Steinberg's findings in turn are consistent with the reports of plaintiff's treating physicians, who documented that plaintiff experienced only occasional flare-ups of his asthma requiring physician or emergency room intervention.

Accordingly, while plaintiff has required ongoing medical treatment for his asthma, as well as occasional trips to the emergency room and to the doctor's office for flare-ups, the ALJ was entitled to rely on the opinions of Dr. Mormon and Dr. Steinberg to determine that plaintiff does not suffer from more than a "marked" limitation in the domain of health and physical well-being as a result of his asthma.

In addition to the medical evidence, plaintiff's mother testified at the ALJ hearing regarding plaintiff's symptoms and the functional limitations imposed by his asthma. The ALJ discounted Ms. Lumpkin's testimony as to the severity of plaintiff's symptoms based on the inconsistencies between her testimony and the other evidence of record. (Tr. 20). The ALJ noted that Ms. Lumpkin gave testimony at the ALJ hearing about not smoking around plaintiff which was contradicted by both numerous notations in the Children's Hospital medical records about plaintiff's exposure to passive smoke and by plaintiff's own testimony at the hearing. (Tr. 20). The ALJ did not err in this regard. There are numerous reports in the record by medical personnel dating from 2006 to July 2009 indicating that plaintiff was exposed to passive tobacco

24

smoke and that his family had been counseled on the risks of smoke exposure to plaintiff. (Tr. 222, 226-228, 232, 297, 311-312, 384, 393, 516). The ALJ was entitled to find Ms. Lumpkin to be less than credible for this reason, and the ALJ's finding in this regard should not be disturbed by the Court. *See Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk v. Sec. of H.H.S.,* 667 F.2d 524, 538 (6th Cir. 1981) (in light of the ALJ's opportunity to observe individual's demeanor at the hearing, the ALJ's credibility finding is entitled to deference and should not be discarded lightly).

The ALJ considered and evaluated all of the opinions and evidence in the record. The opinions and evidence support the ALJ's findings that plaintiff does not meet, medically equal, or functionally equal the Listings. For these reasons, the ALJ's decision is supported by substantial evidence and should be affirmed.

## IT IS THEREFORE RECOMMENDED THAT:

This matter not be remanded pursuant to Sentence Six of 42 U.S.C. § 405(g) for consideration of additional evidence and the decision of the Commissioner be **AFFIRMED.**

Date: _11/8/2011_

_Karen L. Litkovitz_
Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

YOLANDA LUMPKIN,
OBO R.L.,
    Plaintiff,

    vs

Case No. 1:11-cv-207
Barrett, J.
Litkovitz, M.J.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to these proposed findings and recommendations within **FOURTEEN DAYS** after being served with this Report and Recommendation ("R&R"). That period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **FOURTEEN DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

26

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Yolanda Lumpkin
11483 Farmington
Cincinnati, Ohio 45240

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X ☑ Agent
☐ Addressee

B. Received by *(Printed Name)* | C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)* ☐ Yes

2. Article Number
*(Transfer from service label)*

7003 2260 0002 6723 4309

PS Form **3811**, February 2004    Domestic Return Receipt    102595-02-M-1540